AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
11 DEC 16 PM 4:05

MICHAEL R. MERZ
UNITED STATES
MAGISTRATE JUDGE

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  3:1
)
Four Cellular Phones )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A. This Court has authority to issue this warrant under Title 18, United States Code, Sections 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the ____unknown____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 846 and 841(a)(1); 21 U.S.C. 843(b) | Conspiracy to distribute and possess with intent to distribute controlled substances; Use of a telecommunications device in furtherance of a felony under Title 21. |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John M. Allen, Special Agent DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: December 16, 2011

*Judge's signature*

City and state: Dayton, Ohio            Hon. Michael R. Merz, United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephones assigned call numbers:

    a. (937) 660-2960, and International Mobile Subscriber Identity ("IMSI") number 316010161380131, hereinafter referred to as "**Target Telephone 1**";

    b. (937) 460-1318, and International Mobile Subscriber Identity ("IMSI") number 316010161403576, hereinafter referred to as "**Target Telephone 2**";

    c. (219) 506-2121, and International Mobile Subscriber Identity ("IMSI") number 316010151406113, hereinafter referred to as "**Target Telephone 3**"

    d. (937) 660-2280, and international Mobil Subscriber Identity ("IMSI") number 316010153122295, hereinafter referred to as "**Target Telephone 4**"

    hereinafter collectively referred to as the "**Target Telephones,**" whose wireless service provider is Sprint, a company headquartered at 6480 Sprint Parkway, Overland Park, KS 66251.

2. Information about the location of **Target Telephones** that is within the possession, custody, or control of Sprint.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of Target Telephones described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of Target Telephones" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Telephones on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See* 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF FOUR CELLULAR PHONES | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, John M. Allen, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers:

   a. (937) 660-2960, and International Mobile Subscriber Identity ("IMSI") number 316010161380131, hereinafter referred to as "**Target Telephone 1**";

   b. (937) 460-1318, and International Mobile Subscriber Identity ("IMSI") number 316010161403576, hereinafter referred to as "**Target Telephone 2**";

   c. (219) 506-2121, and International Mobile Subscriber Identity ("IMSI") number 316010151406113, hereinafter referred to as "**Target Telephone 3;**"

   d. (937) 660-2280, and international Mobil Subscriber Identity ("IMSI") number 316010153122295, hereinafter referred to as "**Target Telephone 4**";

hereinafter collectively referred to as the "**Target Telephones,**" whose service provider is Sprint, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, KS 66251. The Target Telephones are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Your Affiant is a Special Agent for the United States Drug Enforcement Administration (DEA) within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by your Affiant or relayed to your Affiant by other law enforcement officers involved in this investigation. Your Affiant has been employed as a Special Agent with the Drug Enforcement Administration since September 2010. Your Affiant has been employed in this capacity in worked at the Drug Enforcement Administration office in Dayton, Ohio since January, 2011. Your Affiant has been employed by the Kentucky State Police as a Kentucky State Trooper between July, 2005 and September, 2010. Since the time of your Affiant's employment with the DEA, your Affiant has been involved in narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance in drug trafficking investigations of an international scope. Through training and experience, your Affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841; and 21 U.S.C. § 843(b) have been committed, are being committed, and will be committed by Demetris WARD a/k/a "D" a/k/a "Major" and others. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5.     It is Your Affiant's belief that the Target Telephones, as described above, are being utilized by members of a Mexican drug trafficking organization (DTO) which produces heroin in Mexico and/or purchases heroin from sources of supply in Mexico. The Mexican DTO then smuggles the heroin into the United States, transports the heroin within the United States, stores the heroin in the United States, and ultimately sells/delivers the heroin to customers in several cities in the United States, including Dayton, OH. The Mexican DTO commonly uses drug couriers to smuggle the heroin from Mexico into the United States. The drug couriers are supplied with heroin in Uruapan, Michoacan, Mexico or Tijuana, Baja California, Mexico by members of the DTO in preparation for their trip to the United States. The drug couriers generally ingest up to 50 pellets of heroin, each weighing approximately 14 grams, or hide an equivalent amount of heroin on their persons or in their belongings before embarking on their journey. The drug couriers enter into the United States at legal crossing points along the border between the United States and Mexico and then make their way to airports in California. The couriers board commercial airlines flights in California, commonly at the San Diego International Airport, and travel to several cities in the United States, including Dayton, OH,

where they are met by other members of the DTO and where the distribution process in the United States begins. The heroin is sold and delivered to local Dayton-area drug dealers after the couriers arrive in Dayton and pass the heroin capsules through their digestive systems or turn over the heroin they have smuggled on their persons or in their belongings. This same heroin is most often sold in smaller pre-packaged quantities on the streets in Dayton by the local drug dealers. Your Affiant also believes that the members of the Mexican DTO operating in Dayton, OH, and in other cities, collect the illegal proceeds of the sale of that heroin and arrange for its transport in bulk back to Mexico or arrange for the illegal proceeds to be sent to Mexico in smaller amounts via money remittance service providers. It is your Affiant's belief that **Target Telephone 1** is being used by Demetris Ward to facilitate heroin distribution and money laundering activities in the Dayton, OH area, and that **Target Telephone 2, Target Telephone 3,** and **Target Telephone 4** are being used by persons closely associated with WARD in his heroin trafficking activities. WARD has a prior criminal history including arrests in the Dayton, OH area for drug offenses.

      6.    On 12/13/11 investigators received court authorization from the Honorable Timothy S. Black, United States District Court, to intercept telephonic and radio communications over **Target Telephone 1**. During 12/13/11 and 12/14/11 Demetris WARD aka "D" aka "Major" was intercepted on multiple occasions using Target Telephone 1 to plan, coordinate and affect illegal drug deals. Based on extensive review of the intercepted communications, investigators believe that the majority of the intercepted conversations involved drug transactions taking place in Dayton, OH. On several occasions, WARD spoke with the user of **Target Telephone 2** in order to coordinate and carry out the sale of heroin to customers in Dayton. Several customers called WARD on **Target Telephone 1** expressing their desire to

4

purchase heroin. During their conversations with WARD, customers often stated the quantity of heroin that they wished to purchase and the price they were willing to pay for that heroin. One customer asked WARD if he could get "10 for 80". Another customer wanted to know if she could get "6 for 40". Still another customer inquired of WARD, "What can you do me for 50?" to which WARD responded "6". Investigators know from experience that most personal use heroin customers purchase small amounts of heroin contained in a gel cap and that each gel cap typically costs about $10 and hence "10 for 80" would translate to 10 gel caps of heroin for $80.00, and "6 for 40" means 6 gel caps for $40.00. The customer who had $50.00 would receive 6 gel caps in return for his money. WARD coordinated the sale of heroin to customers by using **Target Telephone 1** to speak with an unknown male (UM-1) using **Target Telephone 2**. WARD directed customers to what investigators believe is a private residence in Dayton, where the customers could purchase heroin from UM-1 for the price agreed upon by WARD. WARD used **Target Telephone 1** to confirm with UM-1 (using **Target Telephone 2**) that UM-1 was in place at the sales point and able to service the customer. On at least one occasion, UM-1 used **Target Telephone 2** to inform WARD, who was using **Target Telephone 1**, that a successful sale had occurred.

      7.     During an intercepted conversation over **Target Telephone 1** on 12/14/11, WARD related to an unknown male (UM-2), using **Target Telephone 3**, that WARD was not satisfied with the quality of the heroin that WARD had received from UM-2. WARD informed UM-2 that WARD'S customers were complaining about the quality of this heroin and that his customers told WARD that they did not like it. WARD expressed frustration that he did not find out that the quality of this heroin was not "fire" (a term investigators know heroin dealers use to laud the quality of heroin) until after he had already "got all that shit bagged." In

5

response, UM-2 told WARD that he too had already "done capped that shit all up" and now would have to take it back. Investigators understood from this conversation that WARD had received some quantity of heroin from UM-2 that WARD packaged for re-sale to his customers, and that WARD's customers were complaining to WARD that the quality of the heroin was not good, and that both WARD and UM-2 would seek a refund for this poor quality heroin.

8. Investigators have learned that WARD is planning on flying to California to purchase 5 kilos of heroin and have an unknown individual drive a vehicle back with the product. Investigators have also learned that WARD is trying to come up with the money to travel to California. During an intercepted conversation over **Target Telephone 1** on 12/15/11, (UM-3) related to WARD, using **Target Telephone 4**, that business is slow and he is trying to help WARD with putting together the money to get the guy down the road. UM-3 discussed that he was only able to get rid of "two bundles yesterday" (12/14/2011). UM-4 discussed with WARD that UM-4 and his partner are trying to get money together to help WARD out so he can get part of the product.

9. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data

6

from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

10. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the **Target Telephones**, including by initiating a signal to determine the location of the **Target Telephones** on Sprint's network or with such other reference points as may be reasonably available.

11. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phones.

## AUTHORIZATION REQUEST

12. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

13. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the

subscriber or user of the **Target Telephones** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

14. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the **Target Telephones** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

15. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephones** outside of daytime hours.

16. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
JOHN M. ALLEN
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on _December 16_, 2011

_____
HONORABLE MICHAEL R. MERZ
UNITED STATES MAGISTRATE JUDGE

9